(38 Misc. Rep. 332.)

### PEOPLE ex rel. AUCHINCLOSS v. PIERCE et al.

(Supreme Court, Special Term, New York County. June, 1902.)

1. DISCOVERY—MANDAMUS.

As commissioners appointed under Laws 1867, c. 489, and Laws 1875, c. 595, to designate a route for the New York Elevated Railroad Company in the city of New York, were not required to have an office or to keep minutes, or file or record maps or documents, they cannot be compelled by mandamus to make a discovery of those papers.

Application by the people, on the relation of Henry B. Auchincloss, for peremptory mandamus against Winslow S. Pierce and others. Application denied.

J. Aspinwall Hodge, Jr., for relator.
Deyo, Duer & Bauerdorf, for defendants.
Charles A. Gardiner, for Manhattan Railway Co.

GREENBAUM, J. The relator applies for a writ of peremptory mandamus to be directed against the defendants, commissioners appointed pursuant to legislative enactment, under the acts which authorized the construction of the elevated railway structure, formerly known as the "Ninth Avenue Road," requiring said commissioners to exhibit to the relator and his attorney all minutes of their proceed-

ings, and all documents, maps, and writings showing all the proceedings taken before them or their predecessors as such commissioners. Upon the call of the motion, an application to intervene, made by the Manhattan Railway Company upon an order to show cause previously obtained, was heard and granted.

Relator's right to the writ is contested upon the ground that the "defendants are not public officers, nor are their papers public records, within the meaning of the statutes"; that no law exists requiring "the preservation for inspection and display of all papers and proceedings which have a public or quasi public interest"; that in no aspect has the relator shown himself entitled to the right of inspection. By chapter 489 of the Laws of 1867 and chapter 595 of the Laws of 1875, the New York Elevated Railroad Company was authorized to build, equip, and operate an elevated railway structure in the city of New York along a designated route, and through certain streets and avenues to be designated by certain commissioners to be appointed under said acts. It appears that commissioners were appointed, in accordance with the provisions of the statutes referred to; that they entered upon the performance of their duties, designated and laid out the route of the railway, authorized certain stations and superstructures, and "did other matters and things connected with their duties, as set forth in said statutes." The petitioner asserts that "during certain years subsequent to the 13th of May, 1880, the said commissioners, claiming to act under the authority of said statutes, had certain other hearings and sittings, and took other proceedings, designating and purporting to authorize certain alterations and changes in the said structures" of the New York Elevated Railroad Company. The petitioner further sets forth that minutes were taken of the proceedings of the commissioners "and recorded, and maps approved and adopted." It does not appear where the minutes were recorded, or what became of the maps which were approved and adopted. There is nothing contained in the acts under which the commission was created which requires the commissioners to have an office for the transaction of business, to keep minutes, or to file or record any documents, papers, or maps.

My attention has not been directed to any general provision of law from which it can be inferred, in the absence of a special provision in the act creating the commission, that the commissioners were obliged to keep minutes or records, or file any documents, proceedings, maps, or papers. The difficulty that confronts one at the threshold of the consideration of the relator's petition is that there appears to be no provision of law which requires the commission to have an office, to keep minutes, or to file or record maps or documents. The commission is a creature of statute, and its duties must therefore be construed in accordance with the obligations that the law casts upon it, either directly by the acts which brought it into being, by some general law, or the common law of the land. As already shown, neither the special nor any general law throws any light upon the question. Does the common law then make it incumbent upon the commission to do the acts referred to? The relator in his argument claims that

if it was not intended to give publicity to the documents and papers of the commission, then it follows that "secrecy is a component part of the common law," and is "specially so in the matter of the minutes of a public body, delegated by the legislature to give away public franchises, and to designate their limitations and extent." The counsel vigorously protests against such a doctrine. I do not consider any such doctrine is here involved. The doctrine might have been properly invoked in the legislative bodies whence emanated the acts creating the commission, but to hold that the commission is obliged to keep minutes, file records, and maps, when no provision of law has been made respecting such a duty, because secrecy is abhorrent to our notions of government, would be an extreme deduction. Indeed, under the peculiar provisions of the acts in question, the commissioners are paid by the railway company, and it appears that the papers and documents the inspection whereof is desired are in the offices of the company. It is difficult to determine whether the commission or the company is the custodian of the documents. It needs no citations of authorities in support of the proposition that a writ of peremptory mandamus will not be issued in a doubtful case.

I am reasonably clear that the commissioners should be regarded as public officers, in whom the taxpayers of New York have an undoubted public interest, and that the petitioner has shown himself to be sufficiently interested in the municipality to entitle him to a standing in court in a proceeding of this nature, if the right existed in any citizen. I do not think, however, that any obligation has been shown to exist on the part of the commissioners to keep an office, or exhibit the papers and maps which may be in their custody or under their control.

Application denied.